# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

LOUIS G. MILLER,
Plaintiff,

Case No. 1:16-cv-1121
Black, J.
Litkovitz, M.J.

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Louis Miller brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"). This matter is before the Court on plaintiff's Statement of Errors (Doc. 12), the Commissioner's response in opposition (Doc. 15), and plaintiff's reply (Doc. 16).

## I. Procedural Background

Plaintiff filed applications for DIB and SSI in July 2015, alleging disability since January 1, 2011 due to depression, anxiety, insomnia, chronic fatigue, suicidal thoughts, and a previous suicide attempt. (Tr. 211). Plaintiff's applications were denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before ALJ Benjamin Chaykin. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing. On July 20, 2016, the ALJ issued a decision denying plaintiff's DIB and SSI applications. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A) (DIB), 1382c(a)(3)(A) (SSI). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment - *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to

2

perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

## B. The Administrative Law Judge's Findings

ALJ Chaykin applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff met] the insured status requirements of the Social Security Act through December 31, 2015.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since January 1, 2011, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The [plaintiff] has the following severe impairments: affective disorder and anxiety disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: (1) He is limited to occasional interaction with supervisors, coworkers and the public. (2) He cannot engage in teamwork or tandem tasks. (3) He is limited to a static work environment, with few changes in the work setting. (4) He is limited to performing simple, routine and repetitive tasks, but not at a production rate pace or with strict production quotas. (5) He is limited to following simple instructions and making simple work-related decisions.
>
> 6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).[1]
>
> 7. The [plaintiff] was born [in] . . . 1956 and was 54 years old, which is defined as

---

[1] Plaintiff's past relevant work was as a Data Processing Technician, which is skilled, light level work that plaintiff performed at the semi-skilled level, and a Mechanical Design Technician, which is skilled, sedentary level work. (Tr. 26, 57-58).

3

an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).[2]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from January 1, 2011, through the date of [the ALJ's] decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 22-29).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In

---

[2] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative medium, unskilled jobs such as landscaper (50,000 jobs nationally), warehouse worker (200,000 jobs nationally), and cleaner (150,000 jobs nationally). (Tr. 29).

4

deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

**D. Specific Errors**

On appeal, plaintiff alleges as his sole assignment of error that the ALJ erred in formulating his mental residual functional capacity (RFC) by: (1) failing to account for all of the mental functional limitations assessed by the state agency psychologists or to explain why he omitted these limitations from the RFC; (2) failing to include any restrictions to account for moderate limitations in concentration, persistence and pace; and (3) failing to take into account evidence that documents the fluctuating and unpredictable nature of his depressive symptoms and allegedly shows he would be unable to sustain full-time work on a continuing basis. (Docs. 12, 16).

**1. Limitations assessed by the state agency psychologists**

Plaintiff alleges that the ALJ erred by failing to fully account for the findings of the non-examining state agency psychologists which he credited in his written decision. (Doc. 12 at 6-9). Plaintiff notes that the ALJ gave their assessments' "moderate weight" while finding plaintiff to

5

be "somewhat more limited" based on Dr. Rosenthal's assessment and plaintiff's subjective complaints. (Tr. 27). Plaintiff alleges that by doing so, the ALJ adopted the assessments of the reviewing psychologists insofar as they limited him to (1) occasional and superficial contact with others, and (2) work that does not involve sudden changes in routine. However, plaintiff argues that the ALJ failed to fully incorporate these limitations into the RFC finding. Plaintiff argues that to the extent he omitted these limitations from the RFC, the ALJ did not fulfill his duty to explain his reasoning. (*Id.* at 6; *see, e.g., Stacy v. Comm'r of Soc. Sec.* 451 F. App'x 517, 518-20 (6th Cir. 2011)). The Commissioner contends that the ALJ adequately incorporated the limitations assessed by the state agency psychologists into the RFC finding. (Doc. 15 at 7-8).

In assessing plaintiff's RFC, the ALJ relied on the opinions of the consultative examining psychologist, Dr. James Rosenthal, Psy.D., and the nonexamining state agency psychologists. Dr. Rosenthal examined plaintiff at the request of the state agency on October 21, 2015. (Tr. 325-330). Plaintiff reported to Dr. Rosenthal that he had gone to a counselor a few times as a young child, he attended counseling between 1984 and 1988 for depression, and he had undergone two psychiatric hospitalizations. (Tr. 326). He was hospitalized at the Lindner Center for two weeks in 2014 for treatment of depression and alcohol abuse, and he was treated on an in-patient basis at Beckett Springs for 30 days for depression and alcoholism. He had recently started counseling in September 2015 at Solutions Behavioral Health. Plaintiff denied current alcohol use. Plaintiff reported he had been laid off from his most recent job five years earlier and he had never experienced social problems at work or problems getting along with others. (Tr. 327).

On mental status examination, plaintiff's appearance and behavior were normal and there was no evidence of thought disturbance or confusion. His affect appeared constricted; he

6

reported feeling depressed and sad most days and described his energy level as low; and he reported eating two to three meals each day and sleeping eight hours each night. He reported he had attempted suicide four times by hanging, overdose and carbon monoxide poisoning, with the latest attempt occurring in 2014. He did not present with signs of anxiety during the exam but reported episodic anxiety symptoms of tachycardia, shortness of breath, and dizziness.

Plaintiff reported that he resided in a house with his partner. (Tr. 328). Plaintiff stated he did some housework for an hour and then rested, but he lacked motivation and interest to do this some days. He paid bills by check, drove and shopped two times each week, bathed every other day, read the news on the internet for about an hour each day, used his computer two hours each day, watched television six hours each day, went to appointments as scheduled, and went to bed around 9:00 p.m. and woke up around 7:00 p.m. He reported he did chores as needed.

Dr. Rosenthal assessed plaintiff with (1) major depression-recurrent, moderate with anxious distress, and (2) alcohol use disorder-in remission. (Tr. 329). Dr. Rosenthal opined that plaintiff's self-report of depressive symptoms with anxiety appeared consistent with his presentation, medical record, and reported history. He also opined that plaintiff's prognosis for change appeared "good," noting that plaintiff attended counseling sessions and he took medication and plaintiff reported the medication was helpful. Dr. Rosenthal assessed plaintiff as having "adequate cognitive skills to understand, remember, and follow a simple one or two-step job instruction." He did not note any problems in plaintiff's ability to maintain attention/concentration and maintain persistence/pace in order to perform simple and multi-step tasks. Dr. Rosenthal also found no problems in plaintiff's ability to respond appropriately to supervision/co-workers in a work setting, noting plaintiff reported no history of interpersonal problems in work settings and no problems relating to bosses or coworkers. With respect to

7

plaintiff's abilities to respond appropriately to work pressures in a work setting, Dr. Rosenthal noted that plaintiff reported ongoing symptoms of depression and a lack of motivation and energy to complete daily work tasks, and plaintiff stated that he coped with current life stress by taking prescribed medication, attending therapy sessions, and spending time with his partner. (Tr. 330).

The ALJ gave "great weight" to Dr. Rosenthal's findings and assessment of plaintiff's mental functional limitations. (Tr. 27). The ALJ credited Dr. Rosenthal's opinion because it was based on a personal interview and mental status examination of plaintiff, and also because Dr. Rosenthal's observations and assessments were consistent with plaintiff's subjective complaints.

The ALJ gave "moderate weight" to the mental RFC assessments of state agency reviewing psychologists Dr. Bonnie Katz, Ph.D., and Dr. Leslie Rudy, Psy.D. (*Id.*). Dr. Katz reviewed the record and issued her assessment on November 15, 2015 (Tr. 107-15) and Dr. Rudy affirmed the assessment on reconsideration on January 11, 2016 (Tr. 131-38). They assessed plaintiff's mental functioning for the period October 5, 2014 onward because they found the evidence predating that period was insufficient. (Tr. 112, 136). They opined that plaintiff had mild restriction in activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no repeated episodes of decompensation of an extended duration. (Tr. 112, 135-36). They assessed plaintiff as "capable of occasional, superficial interactions with others" and as able to "adapt in a work environment that does not involve a fast pace, high production standards, or sudden changes in routine." (Tr. 115, 138). The ALJ found that plaintiff was "somewhat more limited"

than the reviewing psychologist had opined based on Dr. Rosenthal's opinion and plaintiff's subjective complaints. (Tr. 27).

The ALJ found that the evidence established that plaintiff had "some social and adaptation limitations resulting from his mental impairments," but there was "no basis for any greater restriction on social interaction or workplace stressors and adaptation" than he had described in the RFC. (Tr. 27). The ALJ included the following mental functional limitations in the RFC finding:

> (1) He is limited to occasional interaction with supervisors, coworkers and the public. (2) He cannot engage in teamwork or tandem tasks. (3) He is limited to a static work environment, with few changes in the work setting. (4) He is limited to performing simple, routine and repetitive tasks, but not at a production rate pace or with strict production quotas. (5) He is limited to following simple instructions and making simple work-related decisions.

(Tr. 25).

Plaintiff contends these functional limitations do not adequately incorporate the state agency psychologists' restrictions against "superficial" interactions and "a work environment that does not involve . . . sudden changes in routines." (Doc. 12 at 6-9). First, plaintiff argues that "occasional" and "superficial" are not synonymous concepts. (*Id*. at 7). Plaintiff asserts that whereas "occasional" refers to the frequency of interactions, "superficial" refers to the extent of interactions. (*Id*. at 8). Plaintiff cites three decisions to support his argument that the ALJ did not adequately incorporate limitations on the extent of social interaction into the RFC finding: *Walsh v. Colvin*, No. 1:15-cv-1708, 2016 WL 1752854, at *14 (N.D. Ohio May 3, 2016) (limitation to "superficial interactions" in RFC and hypothetical question to the VE did "not adequately address the state agency psychologists' specific limitations to 'work that does not involve frequent social interactions'"); *Gonzalez v. Colvin*, No. 1:13-cv-01358, 2014 WL 1333713, at *9 (N.D. Ohio March 28 2014) (by limiting the plaintiff to work that does not

9

require resolving conflicts or enforcing rules or demands on others, ALJ did not address restrictions related to frequency and intensity of social interactions); and *Hill v. Colvin*, No. 3:14-cv-2073, 2015 WL 8752361, at *5 (N.D. Ind. Dec. 14, 2015) (ALJ limited frequency of interactions with supervisors and coworkers but did not address intensity of interactions, despite taking note of medical opinion that plaintiff was limited to superficial interactions with coworkers and supervisors in terms of frequency and intensity). Second, plaintiff alleges that the restriction in the ALJ's RFC assessment to work that involves "few changes in the work setting" does not adequately account for the limitation against sudden changes in work routines assessed by the state agency psychologists. (Doc. 12 at 8, citing Tr. 25). Plaintiff argues there is a difference between the tasks an individual performs and the environment in which the individual performs those tasks. (*Id*. at 8).

The authorities plaintiff relies on do not support a finding that the ALJ erred here by failing to accommodate the limitations assessed by the state agency psychologists. An ALJ is not required to adopt a medical source's opinion on limitations verbatim in assessing a claimant's RFC. *See* SSR 96-5p, 1996 WL 374183, at *5 ("Although an adjudicator may decide to adopt all of the opinions expressed in a medical source statement, a medical source statement must not be equated with the administrative finding known as the RFC assessment."). "Although the ALJ may not substitute his opinion for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). "Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale." *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275

(6th Cir. 2015). The ALJ is tasked with making an RFC determination, considering the medical opinions and all of the other evidence of record. 20 C.F.R. §§ 404.1546(c), 416.946(c); *Poe,* 342 F. App'x at 157 ("The responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician.").

Here, considering the record as a whole, the ALJ's RFC finding adequately accounted for the limitations assessed by the state agency psychologists and adopted by the ALJ. Initially, the record does not support plaintiff's position that the ALJ fully adopted the mental functional limitations assessed by the state agency reviewing psychologists. The ALJ gave the state agency psychologists' assessments only "moderate" weight. (Tr. 27). Plaintiff argues that the ALJ nonetheless adopted all of the restrictions they assessed because the ALJ found plaintiff was "somewhat more limited" than their assessments indicated. (Tr. 27). However, plaintiff's argument is not supported by the ALJ's decision read a whole. The ALJ stated in his decision that he found "no basis for any greater restriction on social interaction or workplace stressors and adaptation than I have specifically described herein . . . in my determination of the claimant's residual functional capacity." (*Id.*). Thus, the ALJ did not indicate in his written decision that he adopted all of the restrictions on social interaction assessed by the state agency psychologists. Because the ALJ only partially credited the state agency psychologists' assessments, the ALJ did not err to the extent he omitted a restriction on superficial interaction from the RFC finding.

Further, the ALJ did not omit restrictions against sudden changes in routine assessed by the state agency psychologists from the RFC finding. The ALJ included restrictions in the RFC assessment limiting plaintiff to "a static work environment, with few changes in the work setting" as well as to "performing simple, routine and repetitive tasks, but not at a production rate pace or with strict production quotas." (Tr. 25). These restrictions incorporate the state agency

11

psychologists' limitation to "a work environment that does not involve . . . sudden changes in routines." (Tr. 115, 138). ). Any difference between the limitations assessed by the reviewing psychologists and by the ALJ in this area is imperceptible and simply a matter of semantics.

Plaintiff has not shown the ALJ erred by failing to adopt all of the restrictions assessed by the state agency psychologists, whose opinions he afforded "moderate" weight. (Tr. 27). Plaintiff's first assignment of error should be overruled.

**2. Moderate limitations in concentration, persistence and pace**

Plaintiff alleges as his second assignment of error that the ALJ's RFC finding is inconsistent with his express findings and the medical evidence of record because it does not account for plaintiff's moderate limitations in maintaining concentration, persistence and pace. (Doc. 12 at 9). Plaintiff contends that the ALJ acknowledged the moderate limitations in this area that the nonexamining state agency psychologists assessed, and plaintiff further alleges that substantial mental health findings document difficulties in this area. (*See* Tr. 112, 135-36; Tr. 297, 321-22, 336, 344, 487). However, plaintiff alleges that the ALJ failed to account for these limitations in the RFC finding. (Doc. 12 at 10).

The Commissioner argues in response that the ALJ adequately accounted for plaintiff's deficiencies in concentration, persistence and pace by restricting him to working in a static work environment with few changes in the work setting; performing simple, routine and repetitive tasks, but not at a production rate pace or with strict production quotas; and following simple instructions and making simple work-related decisions. (Doc. 15 at 9). The Commissioner alleges that the RFC incorporates the limitations assessed by the state agency psychologists and is supported by Dr. Rosenthal's examination findings and opinion that plaintiff retained the cognitive skills to understand simple one- or two-step instructions.

Moderate limitations in concentration, persistence and pace do not preclude all work. *See Hensley v. Comm'r of Soc. Sec.*, No. 1:15-cv-711, 2017 WL 1055152, at *2 (S.D. Ohio Mar. 21, 2017); *Jenkins v. Colvin*, No. 2:15-cv-1199, 2016 WL 3390587, at *3-4 (S.D. Ohio May 27, 2016) (Report and Recommendation), *adopted,* 2016 WL 3365418 (S.D. Ohio June 17, 2016); *Dotson v. Comm'r of Social Security*, No. 2:13-cv-1065, 2014 WL 6909437, *6 (S.D. Ohio Dec. 8, 2014) (Report and Recommendation), *adopted,* 2015 WL 1006087 (S.D. Ohio March 6, 2015). Where the medical opinion evidence establishes that a claimant has been assessed specific pace, speed, and concentration limitations, the ALJ must include such speed and pace-based restrictions in his RFC formulation and in the hypothetical questions posed to a VE. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516-17 (6th Cir. 2010) (ALJ's hypothetical should have included the specific limitations assessed by the claimant's psychologist, who limited the claimant to "simple, repetitive tasks for two-hour segments over an eight-hour day where speed was not critical."). However, where there is no evidence that provides for "specific, concrete limitation on [the claimant's] ability to maintain concentration, persistence or pace," the ALJ does not err by omitting functional limitations from the RFC finding and the hypothetical questions to the VE to account for moderate limitations in this area. *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 635 (6th Cir. 2016) (a hypothetical providing for simple, unskilled work was not insufficient to convey moderate limitations in concentration, persistence and pace where the plaintiff failed to cite any record evidence that provided for specific, concrete limitations on her ability to maintain concentration, persistence or pace while doing simple, unskilled work); *Hensley*, 2017 WL 1055152, at *5 (hypothetical to the VE that limited the claimant to "unskilled, simple, repetitive tasks with only occasional contact with coworkers, supervisors, and the public; and further limited to work with no rapid production pace" properly

13

accounted for moderate deficiencies of concentration, persistence or pace) (citing *Black v. Comm'r of Soc. Sec.*, No. 5:11-cv-2770, 2012 WL 4506018, at *14 (N.D. Ohio Sept. 28, 2010) (hypothetical question accounts for moderate limitations in concentration, persistence, or pace when it limits claimant to "simple, routine, and repetitive tasks performed in a work environment free of fast paced production requirements, involving only simple, work-related decisions, and routine workplace changes")); *Smith-Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 436-37 (6th Cir. 2014) (distinguishing *Ealy* on the ground that the claimant's moderate limitations in concentration, persistence and pace were conveyed by ALJ's hypothetical limitation to "simple, routine, and repetitive tasks" because psychologist "did not place any concrete functional limitations on [plaintiff's] abilities to maintain attention, concentration, or pace when performing simple, repetitive, or routine tasks").

Here, plaintiff has not provided legal authority or factual evidence that shows any inconsistency between his moderate deficiencies in concentration, persistence and pace and the ALJ's RFC finding. Plaintiff cites two cases to support his argument that the RFC finding is inconsistent with his deficiencies in this area: *Benton v. Comm'r of Soc. Sec.*, 511 F. Supp.2d 842, 847 (E.D. Mich. 2007) (a hypothetical question that limited a plaintiff with moderate deficiencies in concentration, persistence and pace to simple, repetitive work was inadequate); *Bielat v. Comm'r of Soc. Sec.*, 267 F. Supp.2d 698, 702 (E.D. Mich. 2007) (a hypothetical question limiting the plaintiff to "unskilled" and "low stress" jobs did not adequately reflect finding that the plaintiff had a "'marked' limitation in ability to concentrate or persist at a task until timely completion"). However, these cases predate the Sixth Circuit decisions finding no error where the ALJ omitted functional limits from an RFC in the absence of record evidence that provided for specific, concrete limitations on the claimant's ability to maintain

concentration, persistence or pace. *See supra*, p. 13-14. Further, the two cases cited by plaintiff are distinguishable from the present case on their facts. Unlike the more generalized restrictions included in the RFC in those cases, here the ALJ accounted for plaintiff's moderate limitations in concentration, persistence and pace by including several specific restrictions in the RFC finding which limited plaintiff to working in a static work environment with few changes in the work setting; performing simple, routine and repetitive tasks, but not at a production rate pace or with strict production quotas; and following simple instructions and making simple work-related decisions. (Tr. 25). The ALJ's RFC formulation accounts for the specific restrictions assessed by the mental health sources of no fast pace, high production standards, or sudden changes in routine and limited to understanding simple one- or two-step instructions. (Tr. 115, 138, 329). Plaintiff has not identified additional specific restrictions on his ability to maintain attention, concentration and pace that are supported by the record but were not incorporated into the RFC finding. Nor has plaintiff shown that there are additional functional restrictions in this area which the ALJ credited but erroneously omitted from the RFC finding. Thus, plaintiff has not demonstrated that the ALJ erred by formulating an RFC that fails to adequately account for plaintiff's moderate deficiencies in concentration, persistence and pace.

Plaintiff's second assignment of error should be overruled.

### 3. Plaintiff's alleged inability to sustain full-time work

Plaintiff alleges as his third assignment of error that "it would be extremely difficult for a subsequent reviewer to determine that [he] can sustain full-time work activity in a regular and continuing manner given the nature of his psychological disorders." (Doc. 12 at 11-12). Plaintiff alleges that his mental health record "speaks for itself" and shows he cannot sustain work for 8 hours a day and 5 days a week as required under SSR 96-8p, which provides that RFC

15

is typically the "individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing** basis," meaning "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (emphasis in original). Plaintiff alleges that the ALJ's purported failure to properly account for his difficulty sustaining concentration and full-time work is reversible error because according to the VE's testimony, the amount of time an individual is off-task is potentially determinative of whether an individual is able to sustain competitive employment. (Doc. 12 at 12, citing Tr. 61- VE testified that either the need to be off-task three hours during an eight-hour work day or the inability to complete an eight-hour day because of psychologically-based symptoms would be work preclusive).

In support of this allegation of error, plaintiff cites evidence of his psychiatric hospitalizations, mental status examination findings, and his subjective complaints to his mental health providers. (Doc. 12 at 11-12). This evidence shows that plaintiff reported a history of suicidal ideation and suicide attempts dating to age 14, when he first tried to overdose. (Tr. 297). He underwent psychiatric hospitalizations in October 2014 after three failed suicide attempts over a 5-day period and again in December 2014 for suicidal ideation with a plan to use a gun. (Tr. 296-298, 307-09). At the Lindner Center in October 2014, plaintiff reported poor concentration, a low mood, some anhedonia, poor sleep, and frequent worrying about his financial situation. (Tr. 297). Mental status examination findings in October 2014 and September 2015 included a depressed and constricted affect, poor judgment and insight, depressed and anxious mood, and "fair" or moderately impaired concentration/attention. (Tr. 298, 336). When discharged from Beckett Springs in December 2014, plaintiff was assigned a

16

GAF score of 50.[3] (Tr. 308). Plaintiff reported at his initial assessment at Solutions in August 2015 that he "[b]ecomes very tearful, isolates, sleeps excessive amount" and he has racing thoughts. (Tr. 344). Plaintiff also reported during a counseling session in September 2015 that the counselor had always seen him at his best but on that date he was "in a cloud" and "foggy," and that he normally felt this way about once each week, which is what worried him about going back to work. (Tr. 370).

The evidence cited by plaintiff substantiates his claim that he suffers from severe mental impairments and symptoms. However, evidence showing that plaintiff suffers from severe mental health impairments and symptoms does not suffice to demonstrate that the ALJ erred in evaluating his claim of disability. "A court must defer to the ALJ's decision "even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). Here, the ALJ reviewed the record, credited many of plaintiff's subjective complaints and findings of the mental health sources of record, and included functional restrictions in the RFC to account for plaintiff's mental health symptoms. (Tr. 25, 27). The ALJ was not required to include additional restrictions in the RFC to account for plaintiff's moderate limitations in sustaining concentration. *See, e.g., Hensley*, 2017 WL 1055152, at *2 (acknowledging that "a moderately limited ability to concentrate is not work preclusive" and that plaintiff had provided no factual or legal support for the proposition that

---

[3] A GAF score represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed., text rev. 2000) (DSM-IV). The GAF score is taken from the GAF scale, which addresses only "psychological, social, and occupational functioning" and ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death)." *Id.* at 34. The DSM-IV categorizes individuals with scores of 41 to 50 as having "serious" symptoms. *Id.* at 32. The most recent edition of the DSM does not include the GAF scale. *Mosley v. Commr. of Soc. Sec.*, No. 3:14-cv-278, 2015 WL 6857852, at *4 (S.D. Ohio Sept. 14, 2015).

"the ability to concentrate for a short period of time" is not inconsistent with "the ability to concentrate on a sustained basis for a 40-hour work week").

Plaintiff's third assignment of error should be overruled.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **AFFIRMED** and this case be **CLOSED** on the docket of the Court.

Date : 1/23/18

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

LOUIS G. MILLER,
Plaintiff,

Case No. 1:16-cv-1121
Black, J.
Litkovitz, M.J.

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).